John Hicks, III v. Commissioner.
Hicks v. Commissioner
Docket No. 2811.
United States Tax Court
1944 Tax Ct. Memo LEXIS 232; 3 T.C.M. (CCH) 503; T.C.M. (RIA) 44179; May 29, 1944
*232 Leslie C. Garnett, Esq., 331 Tower Bldg., Washington, D.C. for the petitioner. E. L. Corbin, Esq., for the respondent. STERNHAGEN Findings of Fact and Memorandum Opinion The Commissioner determined a deficiency of $1,650.46 in income tax for 1940. Petitioner assails the inclusion in his income of $6,974.84, income of a trust. Findings of Fact The petitioner is a resident of Silver Spring, Maryland. On January 24, 1935, petitioner and his then wife, Harriet Ann Hicks, made a separation agreement, in which petitioner agreed to pay his wife $375, and later $425, a month for her support and the support and maintenance of their three minor children. The agreement was not made in contemplation of divorce. The wife was to have custody of the children. The agreement was never carried into effect. Within a few days after the agreement was made, petitioner and his wife "went back together" and lived together for about two years. On December 21, 1937, they made another short agreement reciting that they had effected a settlement and a division of their property and agreeing to a division of their furnishings and like effects and an automobile and that petitioner should pay the 1937-1938 *233 tuition of the children. On December 22, 1937, under an order of the County Court of Winnebago County, Wisconsin, making final distribution of the residue of the testamentary trust of John Hicks, deceased (petitioner's grandfather), petitioner was assigned 2/7 of the residue of a trust fund which included 553-1/7 shares of the outstanding capital stock of The Hicks Printing Company, of Oshkosh, Wisconsin. Prior to this petitioner had borrowed about $200,000, of which about $60,000 remained unpaid. He executed a promissory note dated December 22, 1937, for $60,000, payable five years after date to The Hicks Printing Company and secured by collateral consisting of Certificate No. 42 for 304.228 shares and Certificate No. 43 for 248.914 shares of The Hicks Printing Company. The note provided: "This note is made and delivered to the Payee on the express condition that all dividends declared by payee on said shares of stock out of current earnings (which dividends are to be paid quarterly commencing April 1, 1938) shall be paid on Certificate No. 42 for 304.228 shares to the Marine National Bank of Milwaukee, Wisconsin, Trustee under a Declaration of Trust of even date herewith made *234 by Harriet Ann Hicks, wife of the maker hereof, for her benefit and for the benefit of the minor children of herself and the maker hereof, and all such dividends payable on Certificate No. 43 for 248.914 shares of said stock shall be paid to Liberty National Bank of Washington, D.C., Trustee under a Declaration of Trust of even date herewith made by the maker hereof for his benefit and for the benefit of said minor children. "This note is accepted on the foregoing conditions and on the further condition that all dividends paid out of surplus by the Payee during the life of said note which shall be payable on all of said shares shall be applied to the payment of the interest and principal of the indebtedness evidenced by this note; application of such dividends to be first made to the payment of interest and then to the payment of principal, after deducting from such dividends as declared and paid from time to time the estimated amount of income taxes, federal and state, that the beneficiaries of said trusts shall be obligated to pay on account of the payment of such dividends, remittance of the amount of such taxes to be made to said Trustees for the payment of said taxes. "Upon *235 payment of the interest and principal of the indebtedness evidenced by this note, the Payee shall mail by Registered Mail said Certificate No. 42 for 304.228 shares of said stock to said Marine National Bank of Milwaukee, Wisconsin, and shall deliver in the same manner said Certificate No. 43 for 248.914 shares of said stock to said Liberty National Bank of Washington, D.C." Certificate No. 42 is for 304.228 shares of The Hicks Printing Company, is dated December 22, 1937, and is in the name of Harriet Ann Hicks. It was never delivered to Harriet Ann Hicks. Prior to the issuance of this certificate it was understood between the parties that she would execute the trust deed hereinafter described. Certificate No. 43 is for 248.914 shares of The Hicks Printing Company, is dated December 22, 1937, and is in the name of John Hicks, III. On December 22, 1937, Harriet Ann Hicks executed a trust deed in which the Marine National Exchange Bank of Milwaukee, Wisconsin, was named as initial trustee. It provided, inter alia: "1. The donor, for value received, gives, delivers, assigns, transfers and sets over to the trustee in trust for the uses and purposes hereinafter prescribed, the *236 securities set forth upon Exhibit "A" hereto attached [Certificate No. 42]." * * *
"5. The net income of said trust shall be distributed, used and applied as follows: "(a) The net income of said trust shall be paid to the beneficiary, Harriet Ann Hicks, so long as she shall live, in approximately equal monthly installments; provided, however, that the trustee shall first be satisfied that said Harriet Ann Hicks has at such time suitably provided for the upkeep, maintenance and education of John Hicks, IV, Robert Francis Hicks and Philip Eckman Hicks, minor children of said Harriet Ann Hicks and John Hicks III. If the trustee shall determine that said Harriet Ann Hicks has not applied sufficient of such income for the support, maintenance and education of said sons, the said trustee shall thereafter make suitable provision for said sons out of such income and shall pay the balance of such income to said Harriet Ann Hicks. "(b) Upon the death of said Harriet Ann Hicks before the youngest surviving child above named shall have reached the age of 24, the trustee shall pay one-third of the income to John Hicks III, if he be surviving, in equal monthly installments and the balance *237 shall be paid to or applied for the benefit of such surviving children and their issue by right of representation in the manner provided in paragraph 6 hereof. Any amounts not needed for the support of any minor children shall be accumulated and added to the principal of the trust. "6. Net income distributable hereunder to any minor or incompetent beneficiary may be used and applied by the trustee in its discretion to and for such beneficiary's maintenance, education, treatment, care, welfare, travel and/or other benefit, as it shall consider expeient in such beneficiary's interest; and the trustee's certificates shall be the trustee's sufficient vouchers in respect of all sums so used, expended or applied." * * *
"8. (a) Upon the youngest surviving child of Harriet Ann Hicks and John Hicks III arriving at the age of 24, 39.4% of the trust estate, including the accumulated and unpaid income, shall be paid over to John Hicks III, if he be surviving. The undistributed portion of the trust estate shall continue to be held in trust for and during the life of Harriet Ann Hicks, or until the youngest of said children shall have reached the age of 24, whichever event shall last occur, *238 and thereupon the said trust estate shall be divided and paid over in equal shares to the surviving children of Harriet Ann Hicks and John Hicks III and their issue by right of representation, subject to the payment of 39.4% of the trust estate to John Hicks III as above set forth, if he be surviving and if said payment has not already been made. "(b) In the event that any of such children shall die before said trust shall be fully distributed but shall leave issue, the income from the trust share which would have been payable to such child shall thereafter be paid to or for the benefit of such issue, share and share alike, in the manner provided in paragraph 6 above or in the discretion of the trustee be accumulated and added to the undistributed trust share of such issue which trust shall shall be paid over to such issue, share and share alike, upon the youngest of such surviving issue arriving at the age of 21. The income or distributive share of any issue dying before distribution hereof shall be paid to the other surviving issue, if any, share and share alike. "(c) In the event that Harriet Ann Hicks shall die and none of said children or their issue shall be surviving, then *239 such trust or any portion thereof not heretofore specifically designated as to application shall be distributed to John Hicks III, and if he be not living, then to his legal heirs. "9. The provisions herein made are intended for the personal protection and welfare of the beneficiaries hereof and shall not be susceptible of assignment, anticipation, hypothecation or seizure by legal process. Whenever and if the trustee shall have notice or shall reasonably apprehend that the interest of a beneficiary has been or is threatened to be diverted from said defined purposes in any manner aforesaid or otherwise, the trustee shall withhold the income and principal of such beneficiary and the sums of principal available in his discretion and apply the same as aforesaid by such means and in such manner as it shall deem expedient in such beneficiary's interest, to the support, maintenance, comfort, welfare and necessities of such beneficiary and the members of his/her family dependent upon him/her for support. The trustee's certificates as to such applications shall be its sufficient vouchers as to sums so from time to time applied. Whenever and if the trustee shall be reasonably satisfied that *240 such diversion is no longer effective or threatened, the trustee may resume the distributions of income and principal herein primarily authorized and directed. Nothing herein contained shall be construed to extend the ultimate term of this trust as herein defined. * * *
"12. The trustee shall have full power * * * In respect of any corporate securities subsisting iu said trust it may at its discretion pay and discharge any liens, debts, or obligations existing on any such assets; * * *." On March 12, 1941, the District Court of the United States for the District of Columbia, reciting that the marriage of December 11, 1926, of Harriet Ann Hicks and petitioner was still undissolved; that the three minor children were in the mother's custody; and that the parties had made a property settlement, whereby petitioner was providing for the support and maintenance of the wife and children, awarded the wife an absolute divorce from petitioner and full custody of the children. The net income for 1940 of the trust created December 22, 1937, was $11,804.08, of which $4,829.24 was applied by the trustees as a payment on petitioner's note. The $4,829.24 was reported by petitioner on his tax *241 return as part of gross income for 1940. The $11,804.08 for 1940 was reported by Harriet Ann Hicks on her return and the tax was paid by her. She claimed a dependency exemption for the minor children. She has raised no question about the payment of this tax by her. Memorandum Opinion STERNHAGEN, Judge: The only question is whether the Commissioner was correct in determining that the entire income of the trust, $11,804.08, was attributable to the petitioner and therefore within his gross income. He resists this because he says that the 304,228 shares covered by Certificate No. 42 were owned by his wife, and that the income thereon was the income of the trust created by her and therefore not his income. There are several omissions in the evidence. Although it is clear that the 304 shares were embodied in a certificate which was drawn to the wife, it does not appear by what manner she acquired any right to the shares. The petitioner by the distribution December 22, 1937, of his grandfather's estate acquired 553 shares of the Printing Company stock. There is no evidence of a gift of any part thereof to his wife, no evidence of an agreement made or extant at that time, or any other *242 transaction from which emerged any right of the wife to take any part of these 553 shares. Since the shares were immediately pledged with the Printing Company as collateral for petitioner's note for $60,000, and since there is some reason to believe that there were marital difficulties, there is ground for inferring that the issuance of the 304 shares in the wife's name was but a convenience and that she was but a nominee. Apparently the trust, made by the wife on the same day as the final distribution, had been in contemplation, else all the 553 shares would have been issued directly to the petitioner, or if a gift to her had been intended by him the trust would not have contained the provisions permitting the payment of his indebtedness and for the remainder to him after his son's arrival at the age of 24. In the absence of evidence showing otherwise, we think it must be held that the trust was his trust, the income of which was to be used for the discharge of his marital and parental obligations, just as by his own admission it was pro tanto for the discharge of his obligation upon his own personal note for $60,000 to the Printing Company. However, even if the trust be regarded *243 as the wife's alone, the petitioner would have to be recognized as the owner from whom she acquired the 304 shares with the condition that the income would be used to discharge his obligations both on his note and to support his family. It is difficult to see how the petitioner can reconcile his voluntary recognition of the $4,829.24 as his own income used to pay his note obligation, and at the same time resist similar recognition of the remaining $6,974.84 as his income used to pay his domestic obligations. It must be borne in mind that in 1940, the year in litigation, the couple were not divorced and that, so far as the evidence shows, petitioner was still under the duty of support and maintenance of both his wife and his children, which duty was only performed (so far as the evidence shows) by the use of the income from the trust. So there is no relevance in the cases dealing with trusts made after divorce when the domestic obligation is discharged by the divorce. This is simply a case where the husband during marriage places property in trust (as under the circumstances we are compelled to believe), or transfers it conditionally and directs that the income shall be used to discharge *244 his indisputable personal obligations. Such income is taxable to him. . Decision will be entered for the respondent.